IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 12, 2008

## STATE OF TENNESSEE v. JAIRIE PIERCE

**Appeal from the Criminal Court for Shelby County
Nos. 06-08410, 06-08411      Paula Skahan, Judge**

---

**No. W2007-02159-CCA-R3-CD  - Filed June 4, 2009**

---

The defendant, Jairie Pierce, was convicted by a jury in the Criminal Court for Shelby County of theft of property valued over $1000, a Class D felony, and theft of property valued over $500, a Class E felony.  He received respective sentences of four years and two years to be served concurrently in the Shelby County Correctional Center.  On appeal, the defendant contends that the evidence was insufficient to convict him of theft of property valued over $1000 and that it was only sufficient to convict him of unauthorized use of a vehicle, a Class A misdemeanor.  We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Robert Wilson Jones, District Public Defender, and Garland Ergüden (on appeal) and Constance J. Barnes (at trial), Assistant Public Defenders, for the appellant, Jairie Pierce.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was tried on two counts of theft and one count of burglary.  The evidence presented at the trial showed that on June 18, 2006, the defendant cut a steel-cable lock on a gate, backed a white pickup truck with a bed lined with moveable stake sides into a ceramic tile business while it was closed, loaded nineteen boxes of tiles worth approximately $650 into the truck bed, and was sitting in the driver's seat when the police apprehended him after responding to a 9-1-1 call from an employee who was cleaning the business.  We omit testimony relating to the conviction for the June 18 theft of property valued over $500 because the defendant does not contest this conviction, and we will include testimony from this event only when relevant to the challenged conviction.

At the trial, Eddie Rogers testified that he worked for Steve's Nursery, which was a landscaping business and nursery in Shelby County. He said that when arriving at work on June 16, 2006, at 7:30 a.m., he saw the gate lying on the ground and the door to one of the two sheds had been ripped open. He said one of the two trucks, the trailer attached to it, the keys to the truck, and many tools were missing. He said the gate looked as if someone had driven the missing truck through it. He said the lock was still attached to the gate. He stated that someone must have climbed over the fence to get onto the property. He said one of the taillights on the remaining trailer had been broken. He said that the business kept the keys to the trucks in one of the storage sheds, in which they also kept their equipment, and that the shed's door was wide open. He said they normally locked the shed. He stated that the shed hinge holding the lock had been pried off and that the lock, still locked, was lying in the middle of the driveway when he arrived.

Mr. Rogers said that Steve's Nursery was entirely enclosed by a fence with a six-foot-tall double gate on two four-inch steel poles. He said that the missing truck was a white 1994 Ford one-ton diesel truck with a cage and that the second truck was a three-quarter-ton Ford pickup. He said that they grew plants on the property for use in their projects. He testified that the missing items he could remember were the truck and trailer, gas-powered hedge trimmers, two chain saws, wheelbarrows, shovels, pole saws, and blowers. He said that other items were missing as well and that he could not work that day due to the missing equipment. He said the missing truck was used to carry heavy loads and had four tires on the back axle. He recognized two knives they used in their work and a pair of damaged "loppers." He did not recognize a hatchet or a "pry bar."

On cross-examination, Mr. Rogers testified that the business was not located in a residential area. He said the knives he recognized were in the condition in which he used them or were very similar to knives that he used. He said these two knives were kept in the truck behind the seat on a tray. He said that he used "loppers" to prune trees. He said that one of the gate doors had been cut. On redirect examination, Mr. Rogers testified that the riding mower, tool parts, and perhaps a blower were in the tool shed when he came to work on June 16. He said other tools were hanging on the walls. He said, however, that it would not have been difficult to find the truck keys hanging on a nail.

Herman Stephenson, the owner of Steve's Nursery and Landscaping in Shelby County, testified that he was traveling on June 16, 2006, when he received a telephone call from Eddie Rogers about a break-in and missing equipment. He said he inspected the damage upon his return. He said the business was located on a one-acre parcel and was enclosed by a chain-link fence. He said the gate had been "flattened from the inside out" and that the doors, including the hinges, and the lock to the shed had been pried off. He said that numerous items were missing, including the truck and trailer. He said that the only things left were those that someone could not take, for example, a walker-rider lawnmower and the second truck, both of which lacked a battery. He said that a second shed containing fertilizer had not been entered. He also stated that they began using a heavier pad lock on the sheds after an earlier incident.

Stephenson testified that the missing truck was a 1994 Ford F-350 diesel-powered truck with a "big stake middle body bed." He estimated that it was worth between $7000 and $9000 when taken. He said the sixteen-foot trailer attached to the truck would cost $1800 to replace. He made

an insurance claim for other missing equipment totaling $3,165.50. He stated that they had later discovered that other items were missing, as well. He said the truck was not listed on the claim because it had been recovered. He said that the truck had no broken windows and that the lock mechanism had not been removed. He said the police had located the missing truck during a burglary attempt the following weekend. He stated that he did not know the defendant, whom he said had never worked for him. He also said he did not give the defendant permission to take or exercise control over the truck or any of the other items. He recognized the butcher knife as one used in their work but did not recognize the other knife, crowbar, and hatchet.

On cross-examination, Mr. Stephenson testified that the shed lock was not damaged but that the hinge on the door had been removed. He said it was not common knowledge that his business stored the keys to the trucks in a shed. He said the keys to the gate were not kept in the storage shed. He said that each shed, whether made of aluminum or wood, had small windows on each side. He said that no surveillance cameras were on the property. He said the missing truck had only a dented bumper, although he said he expected the truck to have more damage considering that someone apparently drove it through the gate. He said that one of the gate's steel posts, embedded in cement, had been broken off at the ground level and that one of the two gates had been damaged.

Officer William Carver of the Memphis Police Department testified that he and Officer Anthony Orlando responded to a prowler call at the site of the ceramic tile business. He said he saw a white pickup truck that had been backed into a fenced area. He said the defendant was sitting in the driver's seat. He said he saw a large knife on the dashboard and that he told the defendant to get out of the car. He said that he asked the defendant why he was there, and he said the defendant told him that he worked at this business. Officer Carver said, however, that the defendant could not tell him the name of the business for which the defendant claimed to work. He said that he patted down the defendant and that he felt a crack pipe in the defendant's right pants pocket. He said he asked the defendant if this object was a crack pipe and that the defendant told him, "Yes, sir, I smoke crack from time to time while I work." He said he removed the crack pipe, arrested the defendant for possession of drug paraphernalia, and placed him in the back seat of the squad car. He said that he performed an inventory search of the white pickup before it was impounded and that the search revealed bolt cutters, a "pry bar," and a hatchet.

Officer Carver testified that while he and his partner were driving the defendant to the police station after arresting him for possession of drug paraphernalia, the defendant stated that although he had stolen the tile, he had not stolen the truck. The officer said he and his partner had not been questioning the defendant at that time. On cross-examination, Officer Carver testified that he did not remember whether the pickup truck had a working lock, whether the truck had been hot-wired, whether it had broken windows, or whether the steering column had been damaged.

Memphis Police Officer Anthony Orlando testified that he and his partner, Officer Carver, responded to a report of a prowler on June 18, 2006. He said that upon arriving, he saw the defendant sitting behind the steering wheel of a white Ford pickup truck that was backed inside a fenced area. He identified two knives, a hatchet, a crowbar, bolt cutters, and pliers as those found during the inventory search. He also recognized the crack pipe as the one confiscated from the defendant.

Sergeant John Guinn of the Memphis Police Department testified that the defendant was brought to his office after his arrest for theft of a vehicle and theft. He said that he informed the defendant of his rights and that the defendant refused to make a written statement. He said, however, the defendant did make an oral statement, in which he claimed that while he did steal the tile, he had purchased the truck from some man for three rocks of crack cocaine and that he had not committed a burglary. Sgt. Guinn stated that three rocks of crack cocaine were worth no more than $50 to $60 and that the truck was, in his opinion, worth more than two or three thousand dollars.

On cross-examination, Sgt. Guinn testified that the defendant did not appear to be intoxicated or under the influence of cocaine, nor did he fall asleep during the twenty- to thirty-minute session. He stated that the defendant never told him that he owned the truck or that he had rented it for use that day. He admitted that exchanges of vehicles for drugs had "been known to happen."

The defendant testified that he was a self-employed mechanic and that he helped a man repair a car the day before June 18, 2006. He said the man came to AutoZone, where he asked the defendant for help with the car. He said he rode with the man to the car, diagnosed the problem as a broken fuel pump, returned to AutoZone to obtain the fuel pump, and rode out again to the car to replace the part. He said that on the way back from the second trip to the car, he and the man saw a traffic jam, which was caused by a truck stopped in the road. He said he recognized the truck as one used in his friend's lawncare business. He said he and some other people pushed the truck out of the right-of-way. He said the person driving this truck asked him for help with the truck. He said that he helped the driver with the truck and that the truck's driver offered to pay him to help him move. The defendant claimed that he rode with the driver to the house, that they could not move the driver at that time because the floors had just been waxed, but that they would be able to move the driver at 4 p.m. He said the driver then drove to a "dope house." He claimed the driver told him to drive the truck around the block while the driver was inside the dope house for a few minutes. The defendant stated that he had not yet driven the truck but that he then drove the truck around the block twice to pick up the driver and that three to four people standing outside the house told him to leave because they thought he was working for the police. He said that he told them that he had an appointment to help move that man at 4 p.m. but that the police arrested him before he returned for the appointment.

The defendant admitted that he drove to the ceramic tile business and that he stole the tile. He said, however, that he had not been to Steve's Nursery. He said he did not see the lawn equipment in the truck, although he said he did see a knife on the dashboard and an axe, pry bar, and pliers on the floorboard of the truck.

On cross-examination, the defendant admitted that he did not know the name of the person who asked him to fix his car. He stated that he smoked crack cocaine as "medicine" and that he bought crack with the money he was paid for repairing the car. He admitted that he had a drug problem and that he smoked crack while he was riding in the truck. He said the truck driver was named "Cory." He denied telling Sgt. Guinn that he had exchanged three rocks of crack cocaine for the truck and stated that he did not, in fact, obtain the truck in exchange for crack cocaine. The jury convicted the defendant of theft of property valued over $1000 and theft of property valued over $500, but it acquitted him of burglarizing Steve's Nursery.

The defendant contends that the evidence does not support a finding of guilt beyond a reasonable doubt. Specifically, the defendant claims that "the jury acknowledged the lack of proof connecting [the defendant] to the original theft of the vehicle by finding him not guilty of burglary of a building." The State responds that the evidence was sufficient for a reasonable jury to find the defendant guilty of theft of property valued over $1000 beyond a reasonable doubt.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The statutes used to convict the defendant define theft of property as (1) knowingly (2) obtaining or exercising control over the property of another (3) without the owner's effective consent (4) with the intent to deprive the owner of the property and (5) with the property valued $1000 or more but less than $10,000. T.C.A. § 39-14-103 (2006); Id. § 39-14-105 (2006). The evidence presented at trial showed the defendant was seated behind the steering wheel of a white pickup truck with fence-like sides on the bed when he was apprehended by police officers, and the defendant testified that he drove the truck. The owner of Steve's Nursery testified that he did not give the defendant permission to drive the truck, which was returned to him by the police. The jury heard testimony that the truck, along with a trailer and lawncare equipment, had been stolen from Steve's Nursery when someone rammed the gate enclosing the property and that the lock on the gate remained intact, although the gate had been destroyed. The evidence reflected that the value of the trailer and tools was several thousand dollars and that the truck was worth $7000 to $9000. This event occurred two days before the defendant was apprehended while driving the truck, and the jury was instructed regarding the inference of theft arising through possession of recently stolen property. The defendant's trial testimony that he was asked to wait for "Cory" and to drive the truck around the block conflicted with the testimony of Sgt. Guinn that the defendant said he had traded crack cocaine for the truck. The defendant testified that he had smoked crack cocaine during the events giving rise to the instant case. Although the jury did not convict the defendant of burglary, they did not accredit the defendant's testimony regarding "Cory" in view of their finding of the defendant's guilt of theft of property valued over $1000. The defendant essentially asks this court to reweigh the evidence on appeal. Consequently, the defendant is not entitled to relief. See State v. Sheffield, 676 S.W.2d at 547 ("Questions of credibility of the witnesses are for the jury.").

Based on the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____

-5-

JOSEPH M. TIPTON, PRESIDING JUDGE